# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2023-2400
_____


ANGELA RIGGINS DANTZLER,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.


_____


On appeal from the Circuit Court for Bay County.
Shonna Young Gay, Judge.


March 11, 2026


ROWE, J.


Angela Riggins Dantzler appeals from her judgment and sentence for first-degree murder. She argues that the trial court reversibly erred when it: (1) found the State did not commit a discovery violation; (2) ruled that Dantzler was competent to proceed without making an independent determination of her competency; and (3) made a *nunc pro tunc* determination of Dantzler's competency without holding a second competency hearing. We affirm on the first issue without further discussion, and write only to address the second and third issues.

*Facts*

Before trial, Dantzler's counsel filed a notice of suggestion of incompetency. Counsel attested that, during her conversations with Dantzler both on the phone and in person, Dantzler showed "severe difficulties retaining information, problems understanding the legal proceedings and steps involved therein, as well as difficulties to adapt to her surroundings." Counsel explained that, based on these difficulties, she was uncomfortable with Dantzler's ability to "assist in her defense." In response, the trial court entered an order appointing a mental health expert to determine whether Dantzler was competent to proceed. The court stated only that it had "reasonable grounds to believe the defendant may be incompetent to proceed."

An appointed expert then evaluated Dantzler and filed a report finding Dantzler competent to proceed. After receiving the expert's report, the trial court held a competency hearing where both parties stipulated to the expert's report. The trial court responded by stating, "based on the stipulation between the State and the defense, the court will adopt the findings of that evaluation." The case proceeded to trial. During the trial, Dantzler exhibited no signs that she was not competent to assist in her defense. Rather, she conducted herself appropriately and presented detailed testimony. The jury found Dantzler guilty of first-degree murder.

Dantzler appealed, arguing that the trial court fundamentally erred when it found her competent to proceed without making an independent determination of her competency. Based on our conclusion that the trial court failed to make the required competency determination, this court exercised its authority under Florida Rule of Appellate Procedure 9.600(b) to permit the trial court to proceed with the specifically stated matters of (1) determining whether a *nunc pro tunc* determination of Dantzler's competency was possible and (2) making an independent *nunc pro tunc* determination of Dantzler's competency, if it was indeed possible. The trial court entered a written order where it made an independent *nunc pro tunc* determination that Dantzler was competent to proceed at the time of trial.

Dantzler moved for rehearing, arguing that she was entitled to a new *nunc pro tunc* competency hearing, not just a *nunc pro tunc* determination of her competency. The trial court denied Dantzler's motion.

A supplemental record was then filed in this appeal. And this court permitted supplemental briefing on the issue. Dantzler repeated her argument that the trial court was required to conduct a second hearing on competency. We disagree. Finding that the trial court corrected the deficiency in the initial competency proceedings by making its independent *nunc pro tunc* competency determination, we affirm and write to explain why.

*Independent Determination of Competency*

Dantzler initially argued that the trial court fundamentally erred when it found her competent to proceed without independently evaluating her competency. "Under the Due Process Clause of the Fourteenth Amendment, a defendant may not be tried and convicted of a crime if he is not competent to stand trial." *Huggins v. State*, 161 So. 3d 335, 344 (Fla. 2014); Amend. XIV, § 1, U.S. Const. "To protect a defendant's right to not be tried while incompetent, the United States Supreme Court explained that states must provide adequate procedures to safeguard the right." *Awolowo v. State*, 389 So. 3d 788, 792 (Fla. 1st DCA 2024) (citing *Pate v. Robinson*, 383 U.S. 375, 386–87 (1966)). To meet this charge, the Florida Supreme Court adopted Florida Rule of Criminal Procedure 3.210. *See Lane v. State*, 388 So. 2d 1022, 1025 (Fla. 1980). Under rule 3.210, whenever a trial court has reasonable grounds to believe that a defendant may be incompetent, the court must hold a hearing, make an independent finding on whether the defendant is competent, and enter a written order stating its finding. *See Awolowo*, 389 So. 3d at 793–96.

Here, the trial court followed the required procedures under the rule up until the time came for the court to make an independent determination of Dantzler's competency. After receiving defense counsel's notice of suggestion of incompetency under rule 3.210, the trial court correctly found that reasonable grounds existed to question Dantzler's competency and,

3

accordingly, appointed an expert to evaluate Dantzler. The trial court then, once it received the expert's report, correctly decided to hold a hearing on Dantzler's competency.

But at the hearing, rather than making an *independent* determination of Dantzler's competency as it was required to, the trial court determined that Dantzler was competent "based on the stipulation between the State and the defense." Because Dantzler's rule 3.210 notice recited specific facts and circumstances that provided reasonable grounds for the trial court to doubt her competency, the trial court erred when it failed to make an independent determination of Dantzler's competency. *Cf. id.* at 796 (finding no error where the rule 3.210 motion included no factual allegations to support the request); *Davis v. State*, 394 So. 3d 801, 802–03 (Fla. 1st DCA 2024) (finding no error where the rule 3.210 motion included only boilerplate language alleging that counsel had "reasonable grounds to believe" the defendant was incompetent "based upon the content of conversations between the undersigned and defendant"). And because a trial court must make an independent determination of competency when there are reasonable grounds to doubt the defendant's competency, the trial court fundamentally erred in failing to make that determination. *See Awolowo*, 389 So. 3d at 793–96.

*Procedure for Making a Nunc Pro Tunc*
*Competency Determination*

From here, the question became how to best address that deficiency. In the past, this court has reversed and remanded the judgment and sentence for a *nunc pro tunc* determination of whether the defendant was competent to proceed at the time of trial. *See, e.g., Zern v. State*, 191 So. 3d 962, 965 (Fla. 1st DCA 2016). But this approach is problematic—to remand for a *nunc pro tunc* determination while reversing the judgment means that the judgment has been vacated. *See* Fla. R. Civ. P. 1.540(b)(5) (discussing what may happen when a judgment is "reversed or *otherwise* vacated" (emphasis supplied)). And, if a judgment is vacated, this court loses jurisdiction over the matter until a new judgment is entered and appealed or our jurisdiction is otherwise invoked in a new appellate proceeding. *See* Art. V, § 4(b)(1), Fla. Const. ("District courts of appeal shall have jurisdiction to hear

appeals . . . from final judgments or orders of trial courts. . . .”). This means that a defendant who disagrees with the trial court's *nunc pro tunc* determination of competency and the resulting judgment and sentence must file another direct appeal and await briefing and a ruling by the appellate court.

A second approach, first employed by the Second District, is to relinquish jurisdiction to the trial court to allow the trial court to make a *nunc pro tunc* determination of competency. *Cramer v. State*, 213 So. 3d 1028, 1029 (Fla. 2d DCA 2017). In support of this approach, the Second District cited the Florida Supreme Court's 1971 decision *Fowler v. State*, 255 So. 2d 513 (Fla. 1971). *Cramer*, 213 So. 3d at 1029. There, the supreme court "temporarily remanded" for the trial court to make a *nunc pro tunc* determination of sanity under what was then Criminal Rule 1.210(a). *See Fowler*, 255 So. 2d at 515. Even so, the supreme court did "not require vacation of the judgment and sentence entered against defendant at this time." *Id*. The supreme court directed that if the trial court could not determine that the defendant was sane, the trial court should vacate the conviction. *Id*. But if the trial court could make the *nunc pro tunc* sanity determination, the case was to be returned to the supreme court. *Id*.

We decline to follow the relinquishment approach taken by the Second District. It is unclear that district courts have authority to relinquish our jurisdiction in this way. *Fowler* does not label the act of temporarily remanding as a relinquishment of an appellate court's jurisdiction, and the Florida Rules of Court Procedure authorize appellate courts to relinquish jurisdiction only in certain circumstances. For example, the Florida Rules of Appellate Procedure allow an appellate court to "relinquish jurisdiction for a specified period for entry of an appropriate order" when parties to a settlement in a workers' compensation case move for "relinquishment of jurisdiction to the lower tribunal for any necessary approval of the settlement." Fla. R. App. P. 9.180(c)(3); *see also, e.g.*, Fla. R. Civ. P. 1.530(f) (directing the appellate court to relinquish its jurisdiction to the trial court for entry of an order specifying the grounds for granting a new trial where the trial court has granted a new trial without stating the specific grounds); Fla. Fam. L. R. P. 12.530(g) (same as civil procedure rule 1.530(f), but expanding it to orders granting a rehearing).

5

A third approach, taken by the Fourth District, is to fully adopt the procedure described in *Fowler*: temporarily remanding a case, without affirming or reversing, to allow the trial court to make a *nunc pro tunc* determination of competency under rule 3.210. *See Machin v. State*, 267 So. 3d 1098, 1101 (Fla. 4th DCA 2019) ("In cases where the circuit court finds reasonable grounds to question a defendant's competency and does not subsequently hold a hearing or make a written finding of competency, *see* Fla. R. Crim. P. 3.210(b), we will temporarily remand the case to the circuit court with specific instructions.").

We decline to follow this approach also, because we cannot find a basis for it in any applicable constitutional provision, statute, or rule. The Fourth District simply states that it is "bound" to apply *Fowler*. *See Machin*, 267 So. 3d at 1101. But nothing in *Fowler* suggests that the supreme court intended to make the approach exercised therein binding on appellate courts. As to the basis for the approach, *Fowler* simply cites two other cases that employed the same approach. *See Fowler*, 255 So. 2d at 515. One of the cases is a federal appellate court case, which justified the approach using federal law. *See United States v. Walker*, 301 F.2d 211 (6th Cir. 1962). And the other is a Third District case, which justified the approach by citing *Walker*. *See Knight v. State*, 164 So. 2d 229, 230–31 (Fla. 3d DCA 1964) (citing *Walker*, 301 F.2d at 215).

But a fourth approach exists under the Florida Rules of Appellate Procedure. In general, a lower tribunal's jurisdiction over a case is "divested by an appeal from a final order." *See* Fla. R. App. P. 9.600(b). But under rule 9.600(b), an appellate court "by order may permit the lower tribunal to proceed with specifically stated matters during the pendency of the appeal." *Id.* Logically, this includes permitting a trial court during the pendency of an appeal to proceed with (1) determining whether it can make a *nunc pro tunc* determination of the defendant's competency and (2) making the *nunc pro tunc* determination if it finds that it can do so. And when an appellate court grants such permission, the appellate court may impose a time limit on when the trial court must make its determination by, which helps to avoid the unnecessary delay that would be caused by reversing and remanding the judgment and sentence. And unlike a

6

relinquishment of jurisdiction, this procedure appears to be authorized under the appellate rules. *

Based on these considerations, after concluding that the trial court erred by failing to make an independent determination of Dantzler's competency, we entered an order under rule 9.600(b) permitting the trial court to, if possible, make a *nunc pro tunc* determination of whether Dantzler was competent to proceed at the time of her trial. In compliance with this court's order, the trial court entered a written order where it made an independent *nunc pro tunc* determination that Dantzler was competent.

### *Motion for Rehearing and Supplemental Briefing*

After the trial court entered its written order, Dantzler moved for rehearing, arguing that the trial court's independent *nunc pro tunc* determination was insufficient to cure the deficiency in the initial competency proceedings. According to Dantzler, the trial court's initial failure to make an independent determination of competency entitled her to a new *nunc pro tunc* competency hearing. She raises this same argument in her supplemental brief. Finding no merit in her argument, we affirm.

---

* We acknowledge that this court has previously characterized the authorization under Florida Rule of Appellate Procedure 9.600(b) for a trial court "to proceed with specifically stated matters" as a "relinquishment" of jurisdiction. *See Lurie v. Auto-Owners Ins. Co.*, 605 So. 2d 1023, 1025 (Fla. 1st DCA 1992) (citing Fla. R. App. P. 9.600(b)). But that characterization of the procedure authorized under the rule was incorrect. While subsection (a) of rule 9.600 authorizes a trial court to exercise "concurrent jurisdiction" with an appellate court, section (b) speaks only in terms of authorizing appellate courts to "permit" lower tribunals "to proceed with specifically stated matters during the pendency of the appeal." Nothing in the rule suggests that the procedure under subsection (b) is relinquishment of an appellate court's jurisdiction over an appeal. *See* Fla. R. App. P. 9.600(b).

Dantzler cites several court decisions in support of her argument that a new competency hearing was required. But in each case, the initial competency hearing itself was inadequate or was not held at all. *See Dougherty v. State*, 149 So. 3d 672 (Fla. 2014); *Zern*, 191 So. 3d at 962; *Machin*, 267 So. 3d at 1098. Here, Dantzler received a competency hearing and did not challenge its adequacy. The only challenge Dantzler raised is that the trial court did not make an independent determination of her competency, which is a separate issue. *See Awolowo*, 389 So. 3d at 793–96 (explaining that a trial court must do three things whenever it has reasonable grounds to believe that a defendant may be incompetent: (1) hold a hearing, (2) make an independent determination of whether the defendant is competent, and (3) enter a written order stating its determination). The trial court held a hearing, made the independent determination of Dantzler's competency *nunc pro tunc*, and entered a written order explaining its determination. Because the trial court has fulfilled its duty to make a written and independent determination of competency, we AFFIRM Dantzler's judgment and sentence.

LEWIS and WINOKUR, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Michael Ufferman of Michael Ufferman Law Firm, P.A., Tallahassee, for Appellant.

James Uthmeier, Attorney General, and Julian E. Markham, Assistant Attorney General, Tallahassee, for Appellee.